[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION OF THE COURT MEMORANDUM OF DECISION
KENNETH CAISSE, ESQUIRE For the plaintiff. CT Page 7167
GARY TRAYSTMAN, ESQUIRE For the defendant.
TIMOTHY LENES, ESQUTRE For the children.
THE COURT: The Court finds it has jurisdiction over The marriage, one party has resided in the state of Connecticut continuously for more than one year prior to the bringing of the action.
The parties have two minor children who have been born to the wife who are issue of the marriage and that is Kristen, who was born on August 5th, 1988 and Kelly, who was born on December 8th 1991. No other minor children have been born to the wife since the date of the marriage.
The parties are not recipients of public assistance.
The Court finds the marriage between the parties has broken down irretrievably and there is no reasonable hope of its reconciliation. The parties have stipulated to an irretrievable breakdown on the basis of no-fault and this Court does and has accepted that stipulation. It is much to the credit of these parties that they've done so because they recognize the importance of staying on reasonably friendly terms for the future sake of their children. And, it is clear by the way the trial proceeded that the parties' desire to do that overrode, from time to timer what might have been, for either of them, a perceived advantage for some moment in the trial for the better of their children and it is much to the credit of both of you.
The Court has carefully considered the statutory criteria for the granting of a dissolution of marriage, for orders of custody, visitation, parental access, child support, alimony, a division of the assets of the marital estate and the liabilities in the marital estate, issues of health insurance and life insurance, and attorneys' fees.
The Court makes the following findings which are not necessarily exhaustive of all the evidence presented to the Court but pertiment to the statutory criteria of these respective statutes.
Mr. Konz is forty-two years old, he was married when he was about twenty years old. He was born in Iowa and he was raised in Rock Valley. He has a high school education. Prior to the marriage he was in the U.S. Navy for two years and then as a plan, intentionally, immediately after marriage reentered the Navy where he stayed until his retirement in 1996. He moved up in his pay grade from El to E7 during his years in the Navy and retired as a Chief Petty Officer. He had many hours of course training in the Navy. He worked largely aboard submarines, he was a CT Page 7168 machinist mate. His skills could be transferable to the HVAC field in domestic work with about one year or less of retraining, is his understanding. He has never sought work in his field of expertise since retiring from the Navy in 1996. His employment has not been steady in these intervening years, he has had six jobs with brief, about a few months each, periods of unemployment for about four occasions in between periods of employment.
Mr. Konz has been with his current employer, Heartland Card Services, for just shy of two years. He is paid solely on commissions to sell the credit card system of his employer to customers in the Connecticut, Massachusetts, and Rhode Island region. His income is averaging about four hundred dollars per week from this work, which he explains is for more than forty hours per week, consequently, he is earning at this endeavor anywhere between eight to ten dollars an hour. This is, based upon his current rate, about twenty thousand dollars a year, however, he believes his income this year may be reflective of the eighteen thousand dollars for the last year.
In the Navy Mr. Konz' income was steady, he had a regular paycheck and substantial benefits for the family, including health and life insurance; he has no such benefits from his current employer.
In 1998 it appears that his gross from his current sales was about eleven thousand five hundred dollars after consideration of expenses. He does not expect his base by way of his client base to be sufficiently established for the kind of referrals necessary to really increase his income for at least a couple of years from this point and that is largely conjecture also.
Mr. Konz has no family of his own in the Connecticut area. He has a respiratory ailment which has been diagnosed as asthma which is severe enough that he cannot run up a flight of stairs comfortably. Mr. Konz smokes cigarettes, he has been smoking cigarettes for a very long period of time, he intends to quit but has not done so. He acknowledges his cigarette smoking is not good for his respiratory condition.
When Mr. Konz moved out of the marital home in May of 1999 he moved into a house that also housed his office in Brooklyn, Connecticut. He had lost that rental this year and recently moved into a different rental house, this one in Woodstock, Connecticut. Both properties, Woodstock, particularly, is in Windham County. Mr. Konz has no particular ties to that community, he finds it convenient for his commuting to his areas of coverage for his job in the states of Rhode Island and Massachusetts. Woodstock, the Court notes, is in the northeast corner of Connecticut bordering Massachusetts and separated from Rhode Island by one community. CT Page 7169
The defendant, Ms. Konz, and the children live in East Lyme, Connecticut, which is in the southeastern part of Connecticut bordering, the Court notes, the Long Island Sound and separated from the Connecticut River by one community. These two towns, Woodstock and East Lyme, are essentially the width of the state of Connecticut apart.
Mrs. Konz is forty-two years old as well, she was twenty years old at marriage. Mrs. Konz was born and brought up in Iowa, as well as Mr. Konz, in the same Rock Valley community. Her health is good, she has historically suffered a bout of depression, however, it never impaired her ability to care for the children. She was taking medication for it at the time, her care for depression has no longer continued and she has terminated it perceiving no need for it as of several years ago.
Mrs. Konz has a high school education and also has twelve months of education and training for a licensed practical nurse. She maintained that license for a period of time but has allowed it to lapse as a result of other training and a different career path. She is a certified pharmacy technician and holds national certification as of 1998 and it is valid throughout the country. She is employed in that field at L and M Hospitals in New London, having been there for sixteen years. She is at the top of her pay scale there. Her financial affidavit represents her current level of pay. Occasionally she can work overtime, particularly in the flu season, but that has not been available to her, overtime, that is, recently.
The parties, as a Navy family, moved a few times early in their marriage. They decided to purchase the home in East Lyme when Mr. Konz expressed that he did not want to live around Navy people in a Navy environment. East Lyme in itself, the Court finds, was not an important community to the parties, it was simply a house which was tiered in their price range. They paid a hundred and twenty-six thousand dollars for it in 1984 utilizing the proceeds from the sale of a prior home and taking a mortgage with a face amount of approximately a hundred and twelve thousand dollars. The house is in substantial disrepair, it has rotting wood on the outside, a significant leak that travels across beams and down into the house and a sinking, rotting floor in the kitchen. All of these conditions have existed for a long time. Mr. Konz never undertook to fix them when he lived in the home. Mrs. Konz, apparently, cannot fix them herself and has never been able to afford their repair.
Now the home, which has a first mortgage balance of a hundred and four thousand dollars, also has a second mortgage by way of a home equity loan on it for about thirty-four thousand dollars. This debt was incurred in 1998 by Mrs. Konz to raise funds for the payment of credit card debts and CT Page 7170 taxes. Mr. Konz took those funds and made the disbursements himself without ever providing a specific accounting to his wife.
The parties in the mid-nineties were involved in an Amway business as distributors, it never brought any real money into the home. Mrs. Konz terminated her involvement because it took time away from the children. Mr. Konz continued for another year and being out virtually every night because of the Amway business or at least that was the basis he told her.
The tax liability that was paid off by the thirty-four thousand dollar debt was a result of Mr. Konz not having proper receipts from his deductions to present at an audit by the Federal Government.
Mr. Konz has a pension that he receives from the Navy which provides somewhere in the neighborhood of about two hundred and seventy-eight dollars per week, or, rounded off, about twelve hundred dollars a month. He has been receiving it since his retirement in 1996. Before the parties' separation those funds were used to pay the mortgage and Mrs. Konz paid every other household bill, needs of the children, automobile expenses, both the automobiles themselves and the insurances, and the second mortgage from her income. Mr. Konz never provided her funds from his pay for these purposes.
Since the parties' separation in May of 1999 Mr. Konz has paid his court ordered child support of a hundred and forty-two dollars per week. He has never voluntarily, post the inception of court involvement, provided Mrs. Konz any other funds for any children's activities, medical bills, or the home or its maintenance.
The children attended St. John's Parochial School in Old Saybrook. Mrs. Konz has paid the tuition on top of all the other bills; it was in excess of five thousand dollars per year. The parish gave the family five hundred dollars for each child. Mr. Konz, despite her repeated requests, never contributed anything to the tuition. In 1999 she told him that she could no longer afford it and could not even come up with the funds necessary to reserve the children's places for what is now the current academic year but was then the upcoming academic year.
Mr. Konz said he wanted them to go there to St. John's but never came up with any funds even though he said he would. Now he protests that the children were enrolled in the East Lyme public schools by Mrs. Konz without his knowledge. The initiative, however, was his, the ball was in his court to come up with the funds necessary to keep them in the St. John's school; he failed to do so. The end result had to have been that the children were going to go to the East Lyme school, there was no alternative for this family. His empty promises lay Mrs. Konz in the CT Page 7171 position of taking the necessary initiative to move the children because he came up with no money.
Now Mrs. Konz wants to move with the children to Iowa and at the outset it should be stated that Mrs. Konz has unequivocally stated that she will not go to Iowa herself if the Court does not permit the children to go. Her reasons, the Court finds, for going are sound. Her family is there, her mother, her brother and sister-in-law and many aunts, uncles, nieces and nephews. Also, Mr. Konz' parents are there. Historically Mrs. Konz has been very close with her mother-in-law. This bond has been strained by the divorce but she has made efforts to rekindle it and has had successful visits with her and has ensured that the paternal grandparents have had times with the children for visitation.
Rock Valley is home to Mrs. Konz, East Lyme is not. Over the marriage Mrs. Konz has iterated a desire to return to Rock Valley, Iowa; it has not been Mr. Konz' desire, he objects to his children moving there and that is the heart of this conflict. He is concerned about the loss of regular physical contact with his children. Mrs. Konz seeks to go to Iowa for the nurturance and emotional support her family can provide her in person, omnipresently, rather than from the limited reassurances that may be offered to her by telephone contact with them. She will also gain from their financial support. They have provided her the assurance of free housing until she is on her feet and free babysitting.
The cost of housing in Rock Valley, Iowa is substantially less than East Lyme. Houses with three bedrooms list for sale at one-third or less of the fair market value of the Konz' home. Her family will provide her with resources, when needed, to watch the children, pick them up when needed and basically provide her the safety net that most parents need in caring for their children.
Unfortunately, Mrs. Konz has none of that here in Connecticut. Mr. Konz has repeatedly assured her that he will be there for her; these assurances have never been followed through on. He not only is not available to help her out in a pinch but she can't even trust him to adhere to his own visitation obligations so that she can trust the reliability of his schedule. Mr. Konz has repeatedly called her to make arrangements for the children when he is late for visitation. His idea is that she needs to be more flexible. Flexibility, while a nice word, is not so nice in this context, it means that Mrs. Konz cannot count on him.
Mrs. Konz has told her husband that he needs to ensure that the children do their homework on his visitation; a reasonable request the Court finds. He continues to be erratic about it and when he arranges for homework it is often in the back of the car at McDonald's. CT Page 7172
The children would have benefited from his residence being nearby theirs for both the regularity of contact and for doing such things as homework but he has never thought to move nearby, particularly when he moved recently. It is after all, he said, only Tuesday and Thursday during the week that he sees them; that is two of five weekdays. Once again Mr. Konz has put his personal desires and comforts for the reliability of being able to reach Massachusetts and Rhode Island a little quicker for his work schedule over the priority of his children.
Finances are tight for both of these parties, the difference, however, is that Mrs. Konz has the children with her. Mr. Konz has been habitually late with his child support. It is clear from Mrs. Konz' finances that this is harmful and deleterious to her ability to provide for the children. of all the many times that Mr. Konz has been late with his child support over the last year he has been only late with his own rent twice. Once again it is a situation of putting his needs before those of the children. While Mrs. Konz has worked overtime to provide for the children it has never occurred to Mr. Konz to try to get some kind of extra work to ease the financial burden on this family.
Young Kelly has asthma, Mr. Konz smokes, it is at least, uncomfortable and likely bad for Kelly's asthma. Mr. Konz knows it. To this date Mr. Konz insists on smoking in the automobile with Kelly in the car. There is absolutely no excuse for putting his perceived need for a cigarette ahead of his son's comfort and health.
Mrs. Konz has anguished over the decision to move to Iowa; she has been actively considering it since the beginning of September and she so notified Mr. Konz. She understands that it will be difficult for the children to be so far from their father, she values his contact with the children, she encourages the children to telephone him on a regular basis. She never speaks poorly of Mr. Konz to the children or around them. The Court finds that she has actively encouraged his visitation with these children.
This matter started with a difficult beginning when Mrs. Konz feared for the children because her son had reported that his father had kicked him with his leg and her daughter had reported along the way that her father was pulling her hair. It need not be determined by this Court whether these incidences that occurred represented any kind of excessive force at all by Mr. Konz. Mrs. Konz had seen Mr. Konz repeatedly grab Kelly by the throat. It was her perception and she believed that her children were in danger and therefore she fled to a shelter with them and received a restraining order from the court. During this period, also, Dr. Henley met with the family in various configurations to help the CT Page 7173 Court determine if Mr. Konz posed a risk to the children. She ultimately opined that he did not. The result of the restraining order was that the children did not see their father for two weeks and then over a three month period, with no objection from Ms. Konz, his visitation was phased in from supervised to unsupervised and then overnights.
Mrs. Konz' concern for these transitions and the resulting affect of the separation and the separation from their father upon the children took them to counseling. She did not block visitation after a court granted her the initial restraining order. She has exhibited good faith throughout this process and her concerns. The Court finds that Mrs. Konz has no interest in preventing these children from being with their father. Further, the Court finds that she fosters the relationship with the children with their father.
This family is Catholic. Mrs. Konz has had to insist that Mr. Konz bring the children to Mass. on his weekends even though it was their joint decision to raise them in this faith and Mr. Konz concurs that church attendance is good for the children. Not until this April, only two months ago, has Mr. Konz started to regularly bring the children to weekly Mass. on his weekends.
These parties each have numerous financial pressures. Mr. Konz has accumulated sixty thousand dollars in credit card indebtedness. Based upon the evidence the Court finds that the Konz family, specifically Mrs. Konz and the children, did not benefit in any way from these purchases of goods or services. Further, of the sixty thousand dollar debt Mr. Konz unilaterally incurred over fifteen thousand dollars in credit debt on a card for which Mrs. Konz is responsible and another seven thousand dollars plus in debt on a joint card.
In her credit card account, which had a zero balance except for Mr. Konz' cellphone charges at the time of the parties' separation, Mr. Konz took it upon himself to use her credit card account to pay for his legal fees and furnishings for his home. Ironically, now he has new furnishings and is going to go bankrupt as he has testified and Mrs. Konz is left with furnishings all well over ten years old and legal responsibility for at least twenty-two thousand dollars in debt.
He invites her to file bankruptcy with him. He is not worried, therefore, any longer about paying the debt. In fact, he incurred the fifteen thousand dollar debt at the commencement of this action with absolutely no intention of paying it back, the Court finds. He has never made one payment on the debt. The Court finds that this is a violation of the automatic orders and will be properly regarded therefore in the financial orders of this case. CT Page 7174
Mrs. Konz does not desire to go bankrupt, she perceives it as a financial responsibility. Therefore, Mr. Konz' remedy of bankruptcy leaves her with the endless dunning phone calls which are a source to her of frustration, anger and embarrassment, especially when overhead by the children.
Mr. Konz has assured Mrs. Konz that he will provide financial support to make it easier for her here in Connecticut so that she need not feel that she needs the safety net of her own family. This man is going bankrupt on his obligation on their joint debt and he is habitually late with child support, this is not a person Mrs. Konz can count on. In measuring the parties' good faith efforts, his fall short.
The stability of life and schedule that Mrs. Konz wants is something akin to saying she needs someone that she can count on. She finds and believes she ran count on her family, it is her firm belief and she has found and the Court finds that she cannot count on Mr. Konz.
These parties were here on April 11th at a Special Masters' pretrial. They came to an agreement which became a court order, it provided for joint custody, a visitation schedule for Mr. Konz and primary physical residence for Mrs. Konz and that she was going to stay here in Connecticut. She believed him one more time on that date and that occasion hoping his assurances that all things would be well would hold. He entreated her to do so one more time on the eve of trial. The promises were empty and the reassurances were false; Mr. Konz didn't even pay his child support that week. And so on April 18th Mrs. Konz finally realized it was not going to ever get any better and resolutely decided she needed to move to Iowa to the security of a life there. She has considered housing and job prospects and they are good. Her career is a solid one and marketable, housing is far less costly and available in Rock Valley, Iowa. The children have apparently stated that they do not want to move away from their father to Iowa. The Court notes that they are eight years old and eleven years old. It will not be easy for them but it is in their best interest that their mother, the primary physical custodian, be able to provide them with a stable and secure home where she feels she can live with security and serenity.
The Court finds that Mrs. Konz has always been the physical custodian of the children and is an excellent mother and that the children have always relied on her as a parent; she should remain in that capacity as the primary physical custodian of the children. The Family Relations' Report and testimony confirms that Mrs. Konz has always been primary parent to these children, it recommends joint legal custody and primary residence to the mother. Upon a second look at the family for CT Page 7175 recommendations regarding Mrs. Konz' desire to move to Iowa with the children the same counselor recommended she be permitted to do so for many of the reasons stated in this decision today. This Court finds that it is in the best interest of the Konz children to allow Mrs. Konz to move with them to Iowa.
Both of these parties are sure that they can work with joint custody; the Court finds that they have different notions, however, of what that means. The Court will accept their representations and order joint legal custody, however, this order is going to be couched with the caution and understanding that on a day-to-day basis that parent who has the child with him or her will be making the decisions.
Mrs. Konz will consult Mr. Konz on all major decisions, particularly when the move occurs and after the move occurs. However, if the parties cannot come to an agreement or Mr. Konz fails to respond to Mrs. Konz' entreaties for a decision, the decision then will ultimately be hers as to the issue before the parties after first consulting Mr. Konz. This is best accomplished, the Court finds, by the parties speaking on the telephone no less than once weekly on a certain assigned day at a certain time to share the news and concerns regarding the children.
The parties have the following assets and debts. There's property at 321 Boston Post Road in East Lyme, Connecticut; after considering all of the evidence in regard to that the Court finds that its gross value, fair market value, is a hundred and fifty thousand dollars. There are miscellaneous furnishings in the East Lyme home which the Court has insufficient information to find a value regarding.
There are furnisnings in the Woodstock home which, while purchased fairly recently for somewhere in the neighborhood of three thousand dollars, the Court has insufficient information to find a present depreciated value.
There is a 1990 lincoln Town Car which the Court values at one thousand dollars; a 1989 Buick Century Regal, which the Court values at five hundred dollars. There is a Navy Federal Credit Union which the Court values at five hundred dollars for savings and two hundred dollars for checking; Liberty Bank savings has forty-two dollars; L and M Employee Credit Union checking and savings of five hundred and forty-seven dollars. There is a transferred L and M defined benefit pension plan, which transferred into a 401K, has an accumulative total value, the Court finds, of twenty-two thousand one hundred and eighty-seven dollars, and another 401K benefit of Ms. Konz' of seven hundred and seventy-five dollars. CT Page 7176
There is indebtedness; mortgage indebtedness of a hundred and four thousand dollars, the home equity loan of about thirty-four thousand dollars, credit card debt significantly on the values as on Mr. Konz' financial affidavit, the Court need not re-repeat them, however, the two credit cards of AT T Universal and MENA total, which appear to be the credit cards upon which Mrs. Konz is the signer, have a total value of debt of about twenty-two thousand six hundred dollars. Mr. Konz also has indebtedness to his parents as on his respective financial affidavit.
The Court ascribes no particular dollar value to Mr. Konz' pension which, while an asset, is in pay status and therefore the cash flow from it by itself provides the value. The Court further notes that Mr. Konz' pension is only an annuity for his life now because he asked Mrs. Konz to waive her joint survivor interest in it at retirement; she did so without understanding what it was or why she should do it except relying on Mr. Konz' assurance that they would lose money otherwise. So, if he dies before her the asset and income flow from that is lost to her and to the children.
Mrs. Konz holds health insurance for the family. Mr. Konz, the Court finds, is eligible for health insurance for himself and his dependents through the military and that there are plans which, through the military, will allow him to have coverage for eighty percent with a twenty percent deductible at no cost to him and it would appear from the evidence that he has not lost the opportunity to avail himself of that benefit of health insurance by having failed to do so by ignorance of its existence up till this point.
Mr. Konz has no life insurance and no proof of insurability. Ms. Konz has the life insurance as shown on her financial affidavit.
The car that Mrs. Konz has been driving is not serviceable as of the time of the trial and in need of radiator repair for purposes of being driveable.
The Court received a variety of Child Support Guidelines from the parties and has been constrained as a result of these orders to perform a different guideline worksheet which will, as I go along in the orders, be indicated.
The following are orders of the Cour:.
The Court orders a dissolution of the marriage.
The Court orders joint legal custody of the minor children to the mother and the father. The mother shall consult with the father on major CT Page 7177 decisions affecting the children. If the parties are at an impasse Mrs. Konz shall ultimately make the decision after consultation with Mr. Konz. Mrs. Konz is the primary physical custodian of the children. While the children remain here in Connecticut the stipulation that was entered into by the parties on April 11 shall constitute the parameters and orders of the Court in regard to visitation and access of the parties; however, the Court orders that, in regard to the summer, Mr. Konz shall have four weeks visitation as provided for in the stipulation in the month of July and shall not be permitted to take it in the month of August because of the impending move.
Once the children have been relocated to the state of Iowa by Mrs. Konz, Mr. Konz' visitation with the children shall be as follows. Any time in Iowa, with four days' notice, so long as it does not interfere with the children's school schedule or with Mother's Day or with the Christmas schedule as provided hereinafter, Spring vacation of the children each year, eight weeks in the summer each year except for this year. On Christmas school vacation Mr. Konz shall have visitation as well, however, it should be noted that this may include Christmas in odd number years and it is to start after December 25 in even number years. However, if he chooses to come to Iowa for Christmas, the Court recognizing that his parents live there, then he shall spend no less than half of Christmas Day with the children.
Mr. Konz is entitled to and shall have regular telephone contact with the children. Mr. Konz shall pay for the travel costs of his visitation with the children whether it be the cost of his travel or the cost of the children's travel.
In regard to Mr. Konz' pension, so that the rest of the orders make sense I'm going to jump this up, this part of the order. In regard to Mr. Konz' pension, Mrs. Konz is, by court order, entitled as an alternative payee to two hundred and forty dollars per month by domestic relation's order or such other form as may be prescribed by the United States Navy of those funds commencing on July 1 and thereafter. The paperwork for the same shall be prepared by her counsel. To the extent that Mr. Konz receives her share of two hundred and forty dollars per month by an inadvertence of the Navy or failure to receive the documents in time, he shall forward her the two hundred and forty dollars per month till he sees it coming out of his pension and then notify her that she should be getting it herself.
The Court, mindful of that order of redistribution of the pension, makes the following additional findings. That for purposes of the child support guidelines the Court credits Mr. Konz' financial affidavit for his current income and his pension income less the part redistributed to CT Page 7178 Mrs. Konz and for Mrs. Konz' column on the child support guidelines the Court credits her receipt of that sum for purposes of computation of the child support guidelines and does not credit her any overtime for income because the overtime is (a) not currently available, and (b) there is no guarantee of it.
This will result, counsel, in rounded numbers of a child support guidelines' calculation which shows a total net weekly income of one thousand fifty-five dollars per week with a basic child support obligation of three hundred and nine dollars per week for which Mr. Konz' share is fifty-two percent, which results in a child support presumptive support of a hundred and sixty-one dollars per week.
The Court orders Mr. Konz shall pay child support in the amount of a hundred and sixty-one dollars per week as guidelines child support by immediate wage withholding on his pension and this may be called an allotment as may be necessary for Navy purposes and shall sign an Advisement of Rights today, before he leaves the building, for that purpose. Until such time as he sees it coming out of his pay for the Navy pension he shall pay it directly to Mrs. Konz.
At such time as Mrs. Konz relocates to the state of Iowa with the children, in recognition that Mr. Konz will be paying the costs of travel and that there may be other costs of visitation, immediately upon that the Court approves and orders a deviation of the child support to a hundred and forty-five dollars per week and this. shall be until and unless he relocates to Iowa and then there shall be no deviation if that occurs.
Mr. Konz shall be responsible for thirty-nine percent, Mrs. Konz sixty-one percent of reasonable and necessary daycare for employment purposes and health expenditures of the minor children that are not paid by insurance after Mrs. Konz pays the first one hundred dollars per year per child in compliance with the Child Support Guidelines. And, that first one hundred dollars per year per child shall commence on January 1, this year already being too far into it to have that apply equitably.
The Court orders that Mrs. Konz shall be entitled to both children as the dependency exemptions for tax purposes.
The Court orders Mr. Konz to convey by quitclaim deed to Mrs. Konz all of his right, title, and interest into the marital home within thirty days of today's date. The Court orders Mrs. Konz to sell the property and she is in sole control of the listing price and the sales price. However, if she chooses not to relocate to the state of Iowa she need not sell the property until the earlier of her remarriage, cohabitation or Kelly's CT Page 7179 eighteenth birthday.
On sale, after necessary closing costs and first and second mortgage payments, Mr. Konz shall pay one-half of a shortfall if there is any, Mrs. Konz shall pay one-half of a shortfall. The Court finds that these obligations are in the nature of family support and, therefore, should not be and are not to be, to the extent that this Court can determine it, dischargeable in bankruptcy. The Court notes that there would not have been such a shortfall if it does occur if Mr. Konz had not made the decisions on his own about the thirty-four thousand dollars, he has not assisted in the payment of the thirty-four thousand dollars home equity loan and he has otherwise burdened her with other debt of his and that is why it's in the nature of family support.
If there is gain on the sale, Mrs. Konz shall receive the first thirty-four thousand dollars of gain and, thereafter, the proceeds shall be divided fifty/fifty.
Mr. Konz shall be responsible for all the credit card indebtedness and other indebtedness on his financial affidavit and he shall indemnify and hold Mrs. Konz harmless on the same.
Mrs. Konz is the sole owner of her 401K and her pensions, free of any claim from Mr. Konz.
Mr. Konz shall pay Mrs. Konz one dollar per year as alimony until the death of either party and this sum is modifiable only in the event that Mr. Konz discharges in bankruptcy an obligation of the parties and the creditor goes after Mrs. Konz for the funds or he fails to indemnify her and the creditor goes after Mrs. Konz for the funds and then the alimony should be modifiable only to the extent that Mrs. Konz incurs costs of defense or liability to repay on any of this indebtedness.
The Court orders no attorneys' fees to either party. The Court orders no other alimony in this matter.
The attorney for the minor children's bill has been approved and the Court orders the parties are equally responsible for one-half of it and it is in the nature of child support and, therefore, is expressly non-dischargeable in bankruptcy. Each party shall make payment of their one-half obligation to Mr. Lenes within sixty days unless he agrees with them in writing to an alternative payment plan.
Mrs. Konz shall maintain the life insurance she has available to her at the present time through her employment for the benefit of the minor children while they are minors. The Court makes no orders of life CT Page 7180 insurance obligations for Mr. Konz because there's no proof of insurability. As to the life insurance on Mrs. Konz' financial affidavit in the face amount of twenty-seven thousand dollars, the Court finds the premiums as shown on her financial affidavit are reasonable and affordable and, therefore, the Court orders her to maintain that life insurance for the benefit of the minor children during their period of minority.
Counsel, do you think I missed anything?
ATTY. TRAYSTMAN: Your Honor, I have just two — Oh, I'm sorry.
THE COURT: Well, I was looking at Mr. Caisse first because he's plaintiff but if you want to let Mr. Travstman go you can.
ATTY. CAISSE: The automobiles, Your Honor? I don't know if you addressed that.
THE COURT: Right, I did miss —
ATTY. CAISSE: And bank accounts or personal property.
THE COURT: Right. I have a catchall on those.
The parties shall maintain, thank you, their automobiles that they currently have and the bank accounts that they currently have, Mr. Konz has the Navy Federals, Mrs. Konz has the Liberty and L and M., and they shall each retain the respective accounts and automobiles free of any claim of the other. To the extent that they need to sign title or other documents for the transfer of the automobiles they shall do so upon presentation. Thank you. Let me just look at my other catchalls.
The personal furnishings in the East Lyme home shall remain the sole ownership of Ms. Konz except for the items that Mr. Konz sought and that she's agreed to give him. The arrangements for those shall be made for him to pick those up at a time when the children are nowhere around or present to save any inadvertent upset that might arise from the transfer of assets. And, Mr. Konz shall be the sole owner of all assets at his Woodstock property free and clear of any claim of Mrs. Konz.
Thank you for bringing those to my attention, Atty. Caisse. Anything else?
ATTY. CAISSE: I don't know if the Court entered an order regarding Mrs. Konz maintaining health insurance as available? CT Page 7181
THE COURT: I thought I did. She shall maintain health insurance. Actually, I ordered both of them to do it because I'm worried that when the children are here her coverage may not apply but his will so I've ordered both of them to maintain it as available, Mr. Konz through the Navy and Ms. Konz through her employer.
ATTY. CAISSE: I must have missed that, Your Honor.
THE COURT: That's okay, that's fine. Mr. Traystman?
ATTY. TRAYSTMAN: Your Honor, I have just two questions. I'm hoping the Court will retain jurisdiction over the terms of the allotment or QDRO.
THE COURT: Absolutely. For purposes of their effectuations in accordance with the tenor of the orders. Thank you.
ATTY. TRAYSTMAN: And I should defer to Atty. Lenes but it's my understanding that the military will not allow the allotment unless it's done by percentage as opposed to amount, that is my understanding, I may be wrong.
ATTY. LENES: That's wrong.
ATTY. TRAYSTMAN: It is?
ATTY. LENES: It has to be either a percentage or amount.
ATTY. TRAYSTMAN: Very good, Your Honor.
THE COURT: Thank you.
ATTY. TRAYSTMAN: Thank you. And thank you, Atty. Lenes.
And the final question I have, Your Honor, I didn't understand the Christmas holiday access. I know you said it but I just didn't understand the week after Christmas between Christmas Day and New Year's.
THE COURT: When Ms. Konz moves to Iowa, Mr. Konz gets the Christmas school vacation. However, in the odd years it includes Christmas, in the even years it starts the day after Christmas unless Mr. Konz perhaps is in Iowa for Christmas. I recognize not only the children are there but his parents are there. Then if he's there on Christmas Day, then he gets half of Christmas Day, at least half of Christmas Day.
ATTY. TRAYSTMAN: Thank you very much, Your Honor, I appreciate that. I have no further questions, nor does my client. CT Page 7182
ATTY. LENES: I have nothing else, Your Honor.
ATTY. CAISSE: Your Honor, I do have a question and maybe Atty. Lenes can help us on this too, regarding the payments, as I understand them, for child support and the two forty. That will exceed sixty percent of Mr. Konz' entitlemeht, which I don't believe the military will enforce.
ATTY. LENES: That is correct.
THE COURT: If that is so then the two forty comes out first and I'll amend the orders. If the Navy will not take all those sums, then the two hundred and forty is the priority to come out first, pursuant to the orders, and the child support up to the amount that is permitted will come out and at such time as Mrs. Konz seeks a wage withholding order from Mr. Konz' primary employment for child support, that may revert to that instead. That's how I'll amend the order for that.
ATTY. CAISSE: In reference to the two forty —
THE COURT: Thank you for enlightening me, folks, about Navy law. I have a lot to learn about it. Thank you. Go ahead.
ATTY. TRAYSTMAN: Don't we all, Your Honor. That's why Atty. Lenes is here.
ATTY. CAISSE: Once you do start to learn, Your Honor, it changes so.
THE COURT: Well, if you guys don't know it, none of us are going to know it, so go ahead.
ATTY. CAISSE: As far as the two forty, my impression would be, and maybe Atty. Lenes can assist us on this as well, would be that that would be from Mr. Konz' net, —
ATTY. LENES: No.
ATTY. CAISSE: — which means she would be taxed on that and whether or not the Court —
ATTY. LENES: No, that will come from his dross, she will receive her own W-2 with taxes taken out.
ATTY. CAISSE: Okay.
THE COURT: And that's why I named her the alternative payee, I intended CT Page 7183 it to be the way Mr. Lenes was stating ft. Okay?
ATTY. TRAYSTMAN: We understood it to be that way. Thank you, Your Honor.
THE COURT: All right. Mr. Konz, sir, do you understand these orders?
THE PLAINTIFF: Yes, I do.
THE COURT: Mrs. Konz, ma'am, do you understand the orders?
THE DEFENDANT: Yes.
THE COURT: All right. Folks, it's an unhappy situation, I wish you both the best of luck. Thank you.
ATTY. TRAYSTMAN: Your Honor, it's again been a privilege. Thank you very much on behalf of my client to your staff as well as yourself.
THE COURT: Thank you. You're all set, I'm going to go on to my next matter.
Thank you, counsel.
ATTY. CAISSE: Thank you, Your Honor.
ATTY. TRAYSTMAN: Thank you, Your Honor.